Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:      516.741.4977
Facsimile:       516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHELDON LORENSON, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| AVEO PHARMACEUTICALS, INC., KENNETH M. BATE, MICHAEL P. BAILEY, KEVIN CULLEN, CORINNE EPPERLY, ANTHONY B. EVNIN, GREGORY T. MAYES, and SCARLETT SPRING, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Sheldon Lorenson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against AVEO Pharmaceuticals, Inc. ("AVEO" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to LG Chem, Ltd., through merger vehicle Acacia

Acquisition Sub, Inc. ("Merger Sub" and collectively with Parent, "LG Chem") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 18, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of AVEO's common stock will be converted into the right to receive $15.00 in cash, without interest.

3.      Thereafter, on November 15, 2022, Aveo filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction. Further, on November 25, 2022, Aveo filed a Definitive Proxy Statement on Form DEFM14A attaching the proxy statement (the "Definitive Proxy Statement" and collectively with the Preliminary Proxy Statement, the "Proxy Statement") with the SEC in support of the Proposed Transaction

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Proxy Statement, preventing Plaintiff from making a fully informed decision on whether

to vote in favor of the Proposed Transaction.  The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Aveo, provided by Aveo management to the Board and the Board's financial advisor Moelis & Company LLC ("Moelis") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Moelis, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Iowa and, at all times relevant hereto, has been a AVEO stockholder.

8.      Defendant AVEO an oncology-focused biopharmaceutical company, focuses on developing and commercializing medicines for patients with cancer. AVEO is incorporated in Delaware and has its principal place of business at 30 Winter Street Boston, Massachusetts.  Shares of AVEO common stock are traded on the Nasdaq Stock Exchange under the symbol "AVEO".

9.      Defendant Kenneth M. Bate ("Bate") has been a Director of the Company at all relevant times.  In addition, Bate serves as the Chairman of the Board of Directors.

10.      Defendant Carlton Bailey ("Bailey") has been a director of the Company at all relevant times.

11.     Defendant Kevin Cullen ("Cullen") has been a director of the Company at all relevant times.

12.     Defendant Corinne Epperly ("Epperly") has been a director of the Company at all relevant times.

13.     Defendant Anthony B. Evnin ("Evnin") has been a director of the Company at all relevant times.

14.     Defendant Gregory T. Mayes ("Mayes") has been a director of the Company at all relevant times.

15.     Defendant Scarlett Spring ("Spring") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party LG Chem is a leading global chemical company with a diversified business portfolio in the key areas of petrochemicals, advanced materials, and life sciences.

18.     Non-Party Merger Sub is a wholly owned subsidiary of LG Chem created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.     AVEO Pharmaceuticals, Inc. an oncology-focused biopharmaceutical company, focuses on developing and commercializing medicines for patients with cancer. It markets FOTIVDA, an oral, next-generation vascular endothelial growth factor receptor tyrosine kinase inhibitor, which is used for the treatment of adult patients with relapsed or refractory advanced renal cell carcinoma (RCC). The company is also developing tivozanib for the treatment of RCC, hepatocellular carcinoma, ovarian cancer, immunologically cold tumors, and cholangiocarcinoma. In addition, it is developing Ficlatuzumab, a potent humanized immunoglobulin G1 (IgG1) monoclonal antibody that targets hepatocyte growth factor that is in a Phase II clinical trial for the treatment of head and neck squamous cell carcinoma, pancreatic cancer, and acute myeloid leukemia; AV-380, a potent humanized IgG1 inhibitory monoclonal antibody for the treatment or prevention of cachexia; AV-203, a potent humanized IgG1 monoclonal antibody that targets ErbB3; and AV-353 that targets the Notch 3 pathway. The company has collaborations and license

agreements with AstraZeneca PLC; EUSA Pharma (UK) Limited; Biodesix, Inc.; CANbridge Life Sciences, Ltd.; Biogen Idec International GmbH; St. Vincent's Hospital Sydney Limited; and Kyowa Kirin Co., Ltd. The company was formerly known as GenPath Pharmaceuticals, Inc. and changed its name to AVEO Pharmaceuticals, Inc. in March 2005. AVEO Pharmaceuticals, Inc. was incorporated in 2001 and is headquartered in Boston, Massachusetts.

23.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the August 4, 2022 press release announcing its 2022 Q2 financial results, the Company highlighted  Q2 2022 FOTIVDA U.S. Net Product Revenue Growth of 24% Compared with Q1 2022 .

24.     Speaking on the positive results, CEO Michael Bailey said, "We believe this momentum will continue to build in the second half of 2022 and we continue to be confident in our FOTIVDA U.S. net product revenue guidance for fiscal year 2022 of $100.0 million to $110.0 million,"

25.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by AVEO.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

26.     Despite this upward trajectory, the Individual Defendants have caused AVEO to enter into the Proposed Transaction without providing requisite information to AVEO stockholders such as Plaintiff.

### *The Flawed Sales Process*

27.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.    Additionally, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and LG Chem, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

30.    On November 9, 2022, AVEO and LG Chem issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SEOUL, South Korea and CAMBRIDGE, Mass. and BOSTON, Oct. 18, 2022 (GLOBE NEWSWIRE)** -- LG Chem, Ltd. ("LG Chem") (KOSPI: 051910) and AVEO Oncology ("AVEO") (Nasdaq: AVEO), a commercial stage, oncology-focused biopharmaceutical company committed to delivering medicines that provide a better life for patients with cancer, announced today that they have entered into a definitive agreement under which LG Chem will acquire AVEO for $15.00 per share in an all-cash transaction with an implied equity value of $566 million on a fully diluted basis.
>
> The combination of LG Chem's Life Sciences division and AVEO is expected to create a global oncology organization with a robust portfolio of innovative products supported by full capabilities from discovery to clinical, biologics manufacturing and U.S. commercialization, at a scale capable of broadly delivering on its mission to improve the lives of patients with cancer. Bringing together AVEO and LG Chem is expected to extend LG Chem Life Sciences' commercial footprint to the U.S., diversify its pipeline with a broad range of oncology therapies and accelerate LG Chem's efforts to deliver continued growth through the development and commercialization of world-class cancer therapies.

Through this transaction, AVEO will immediately establish LG Chem's commercial presence in oncology through AVEO's lead product, FOTIVDA® (tivozanib), which received U.S. Food and Drug Administration (FDA) approval in March 2021 for the treatment of adult patients with relapsed or refractory advanced renal cell carcinoma (RCC) following two or more prior systemic therapies. In addition, the combined company will have significantly greater resources to develop and commercialize both companies' robust clinical pipelines of innovative oncology medicines.

Upon completion of the transaction, AVEO will establish and operate as the U.S. commercial foundation for LG Chem Life Sciences' oncology segment. Through this transaction, the combined company will expand its high-value and sustainable pipelines in oncology and bring cancer therapies to patients in need.

"With its track record of clinical success, deep pipeline of innovative therapies and continued growth trajectory following the successful commercialization of FOTIVDA®, AVEO is the perfect partner for LG Chem Life Sciences," said Shin Hak-Cheol, Chief Executive Officer of LG Chem "This transaction represents the next step in our portfolio transformation towards higher growth markets and provides a strong commercial foundation in oncology as we continue to develop our anti-cancer offerings. We remain focused on prudently investing in our R&D capabilities, continuing to build a leading portfolio of therapies and transforming lives through inspiring science and leading innovation. With our shared values of collaboration, agility and passion, we are excited to welcome AVEO and its talented employees to LG Chem as we continue to advance our sustainable goal of becoming one of the top global pharmaceutical companies."

"We are thrilled to announce this transaction, which delivers a compelling all-cash premium to our shareholders, while positioning AVEO to accelerate our strong momentum to the benefit of the oncology patients we serve," said Michael Bailey, President and Chief Executive Officer of AVEO. "By joining forces with LG Chem, AVEO expects to have significant financial and development resources to help AVEO fully realize the tremendous potential of our promising pipeline. LG Chem shares AVEO's deep commitment to patients and vision of developing innovative therapies designed to provide substantial impact in the lives of cancer patients with clear unmet medical needs. This transaction is a testament to the extraordinary efforts of our employees, who will play an integral role in the success of the combined company. We look forward to entering our next chapter of growth with the support of LG Chem"

"This transaction represents the culmination of a thorough review of opportunities by the Board to maximize shareholder value and delivers compelling value to AVEO shareholders," said Kenneth Bate, AVEO's Chairman of the Board. "We are confident that with the support and resources of LG Chem, AVEO will continue advancing its mission of passionately pursuing a better life for patients with cancer."

LG Chem is actively advancing multiple clinical and pre-clinical stage anti-cancer therapies. LG Chem will be able to harness the full potential in oncology through this transaction and become a global, fully integrated – from R&D to commercial stage – pharmaceutical company.

### *Potential Conflicts of Interest*

31.     The breakdown of the benefits of the deal indicate that Aveo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Aveo.

32.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Proxy Statement accounts for these holdings, it fails to account for the specific amounts to be paid out:

| Name and Address of Beneficial Owner | Number of Common Shares Beneficially Owned | Common Stock Underlying Options Exercisable Within 60 Days | Total Equity Securities Beneficially Owned | Percentage of Shares Beneficially |
|---|---|---|---|---|
| **Holders of more than 5% of our voting securities** | | | | |
| Entities affiliated with AIGH Capital Management, LLC[1] | 1,931,351 | — | 1,931,351 | 5.3% |
| **Directors and Named Executive Officers** | | | | |
| Kenneth Bate | 375 | 58,827 | 59,202 | * |
| Anthony Evnin | 41,851[2] | 58,827 | 100,678 | * |
| Gregory Mayes | — | 39,625 | 39,625 | * |
| Scarlett Spring | — | 39,625 | 39,625 | * |
| Corinne Epperly | — | 29,774 | 29,774 | * |
| Kevin Cullen | — | 27,692 | 27,692 | * |
| Michael Bailey | 53,410 | 852,947 | 906,357 | 2.5% |
| Michael Ferraresso | 13,334[3] | 182,812 | 196,146 | * |
| Erick Lucera | — | 130,995 | 130,995 | * |
| Jebediah Ledell | — | 51,812 | 51,812 | * |
| All current executive officers and directors as a group (10 persons) | 108,970 | 1,472,936 | 1,581,906 | 4.4% |

33.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Name | Vested Stock Options (#) | Value of Vested Stock Options ($) | Unvested Stock Options (#) | Value of Unvested Stock Options ($) | Total Value of Outstanding Stock Options Stock ($) |
|---|---|---|---|---|---|
| ***Non-Employee Directors*** | | | | | |
| Kenneth Bate | 44,062 | $ 356,150 | 13,125 | $ 140,831 | $ 496,982 |
| Anthony Evnin | 44,062 | 356,150 | 13,125 | 140,831 | 496,982 |
| Gregory Mayes | 35,875 | 316,139 | 13,125 | 140,831 | 456,970 |
| Scarlett Spring | 35,596 | 308,795 | 13,404 | 143,175 | 451,970 |
| Corinne Epperly | 24,636 | 231,838 | 22,864 | 224,587 | 456,425 |
| Kevin Cullen | 22,555 | 215,260 | 24,945 | 243,665 | 458,925 |

| Name | Vested Stock Options (#) | Value of Vested Stock Options ($) | Unvested Stock Options (#) | Value of Unvested Stock Option ($) | Total Value of Outstanding Stock Options ($) |
|---|---|---|---|---|---|
| ***Executive Officer*** | | | | | |
| Michael Bailey | 659,042 | $5,436,522 | 858,164 | $8,787,671 | $14,224,192 |
| Michael Ferraresso | 142,495 | 1,236,496 | 255,068 | 2,552,158 | 3,788,654 |
| Jebediah Ledell | 4,617 | 52,311 | 193,085 | 1,805,153 | 1,857,464 |
| Erick Lucera | 115,628 | 964,329 | 253,172 | 2,517,675 | 3,482,004 |

34.     In addition, certain employment agreements with certain Aveo executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff. These amounts are disclosed as follows:

### Golden Parachute Compensation

| Name | Cash($) | Equity($) | Perquisites/ Benefits($) | Total($) |
|---|---|---|---|---|
| Michael Bailey | 2,013,333 | 8,069,663 | 57,865 | 10,140,861 |
| Erick Lucera | 845,739 | 2,320,943 | 38,577 | 3,205,509 |
| Michael Ferraresso | 853,329 | 2,342,343 | 38,577 | 3,234,249 |

35.     The Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Aveo, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

37.     On November 15, 2022, the Aveo Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

a.  Whether the confidentiality agreements entered into by the Company with LG Chem differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

b.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including LG Chem, would fall away; and

c.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Aveo's Financial Projections*

39.    The Proxy Statement fails to provide material information concerning financial projections for Aveo provided by Aveo management to the Board and Moelis and relied upon by Moelis in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.    Notably the Proxy Statement reveals that as part of its analyses, Moelis reviewed "certain internal information relating to the business, earnings, cash flow, assets, liabilities, financing and prospects of the Company."

41.    The Proxy Statement should have, but fails to provide, certain information in the projections that Aveo management provided to the Board and Moelis.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples.  What

they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

42.     With regard to *Base Case* Projections prepared by Aveo, the Proxy Statement fails to disclose material line items, including the following:

     a.  EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest and taxes; and

     b.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: income tax expenses, depreciation and amortization, decreases in net working capital, increases in net working capital, and capital expenditures.

43.     With regard to *Upside Case* Projections prepared by Aveo, the Proxy Statement fails to disclose material line items, including the following:

     a.  EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest and taxes; and

     b.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: income tax expenses, depreciation and amortization, decreases in net working capital, increases in net working capital, and capital expenditures.

44.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45.     The Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

46.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Moelis's financial analyses, or whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Moelis*

48.     In the Proxy Statement, Moelis describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With respect to the *Discounted Cash Flow Analysis – Base Case*, the Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine discount rates ranging from 13.0% to 17.0%;

b.  The Company's weighted average cost of capital;

c.  The utilized risk-free rate based on twenty (20)-year U.S. government bonds;

d.  The utilized equity risk premium;

e.  The utilized size premium;

f.  The utilized selected range of unlevered betas;

g.  The specific debt to total capitalization ratio;

h.  The inputs, metrics, and assumptions used to determine a range of perpetuity growth rates of negative 75.0% to negative 25.0%;

i.  The terminal values calculated;

j.  The specific amount of U.S. federal and state net operating losses ("NOLs");

k.  The inputs, metrics, and assumptions used to determine a 20% discount to current market prices, warrant coverage, and costs of financing; and

l.  The value of the Company's U.S. federal R&D tax credits.

50.  With respect to the *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine multiple reference ranges of 0.7x to 1.1x for 2026E and 0.5x to 0.9x for 2027E.

51.  With respect to the *Discounted Cash Flow Analysis – Upside Case*, the Proxy Statement fails to disclose:

a.  The specific discount rate range used;

b.  The Company's weighted average cost of capital;

c.  The utilized risk-free rate based on twenty (20)-year U.S. government bonds;

d.  The utilized equity risk premium;

e.  The utilized size premium

f.  The utilized selected range of unlevered betas;

g.  The specific debt to total capitalization ratio;

h.  The specific perpetuity growth rate used;

      i.   The specific amount of U.S. federal and state net operating losses ("NOLs");

      j.   The terminal values calculated;

      k.   The inputs, metrics, and assumptions used to determine a 20% discount to current market prices, warrant coverage, and costs of financing; and

      l.   The value of the Company's U.S. federal R&D tax credits.

52.    With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose:

      a.   The value of each transaction compared;

      b.   The date on which each transaction compared closed on; and

      c.   The inputs, metrics, and assumptions used to determine the range of selected multiples of 0.8x to 1.0x for the Base Case.

53.    With respect to the *Premiums Paid Analysis*, the Proxy Statement fails to disclose:

      a.   The specific transactions compared;

      b.   The value of each transaction compared;

      c.   The date on which each transaction compared closed; and

      d.   The inputs, metrics, and assumptions used to determine ranges of premiums of 40% to 60%;

54.    With respect to the *Analyst Share Price Target Analysis*, the Proxy Statement fails to disclose:

      a.   The specific analyst price targets consulted; and

      b.   The names of the Wall Street research firms who authored each individual price target.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Aveo stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### <u>(Against All Defendants)</u>

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

64.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of AVEO's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

69.     The Individual Defendants acted as controlling persons of AVEO within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause AVEO to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled AVEO and all of its employees.  As alleged above, AVEO is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: December 5, 2022                    **BRODSKY & SMITH**

                                                   By:   */s/ Evan J. Smith*
                                                           Evan J. Smith
                                                           240 Mineola Boulevard
                                                           Mineola, NY  11501
                                                           Phone:  (516) 741-4977
                                                           Facsimile (561) 741-0626

                                                           *Counsel for Plaintiff*